**FOR PUBLICATION**                                                                 **CLOSED**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| MARKEL INTERNATIONAL INSURANCE COMPANY, formerly known as TERRA NOVA INSURANCE COMPANY and CERTAIN UNDERWRITERS AT LLOYD'S OF LONDON SUBSCRIBING TO REINSURANCE AGREEMENTS KNOWN AS "COMPREHENSIVE CATASTROPHE EXCESS OF LOSS TREATY PROGRAM" AND "SPECIAL CASUALTY CONTINGENCY EXCESS OF LOSS TREATY PROGRAM" | **OPINION**  Civ. No. 05-5522 (WHW) |
| Petitioners, | |
| v. | |
| WESTCHESTER FIRE INSURANCE COMPANY, | |
| Respondent. | |

**<u>Walls, Senior District Judge</u>**

Petitioners Markel International Insurance Company and Certain Underwriters at Lloyd's of London move to compel separate arbitration proceedings and stay respondent's arbitration demand. Respondent Westchester Fire Insurance Company cross-moves to commence arbitration to determine the scope of arbitration. These motions are decided without oral argument pursuant to Fed. R. Civ. P 78. Petitioners' motion to compel arbitration and stay respondent's arbitration demand is denied. Respondent's cross-motion to compel arbitration is granted.

**FACTS AND PROCEDURAL BACKGROUND**

Accepting as true the allegations in the complaint, the Court recounts the basic facts of this case: Markel International Insurance Company and Certain Underwriters at Lloyd's London ("Reinsurers" or "Petitioners"), both with principal places of business in London, England, entered into two reinsurance contracts with Westchester Fire Insurance Company ("WFIC" or "Respondent"), a New York insurance company licensed to do business in New Jersey, called the Comprehensive Catastrophe Excess of Loss Treaty Program ("Comprehensive Catastrophe Program") and the Special Casualty Contingency Excess of Loss Treaty Program ("Special Contingency Program"). Reinsurers agreed to cover WFIC for a share of the losses respondent paid to its policyholders. These reinsurance contracts are multi-layered and had different terms of years but contain substantially similar arbitration clauses. The arbitration clauses are silent with respect to the issue of consolidated arbitration.

WFIC insured the Babcock & Wilcox Company ("B&W") between 1977 and 1979, issuing multiple policies during that time. After paying asbestos losses to B&W covered by the policies, WFIC billed the losses to Reinsurers under the Comprehensive Catastrophe Program. Petitioners' refusal to cooperate evoked an Arbitration Demand by respondent on October 20, 2005. Respondent requested a single consolidated arbitration proceeding and appointed a single arbitrator pursuant to the arbitration clauses in the Comprehensive Catastrophe Program and the Special Contingency Program reinsurance contracts that read as follows:

> If any dispute shall arise between the Reinsured and the Reinsurer, either before or after the termination of this contract, *with reference to the interpretation of this contract or the rights of either party with respect to any transactions under this contract*, the dispute shall be referred to three

>arbitrators, one to be chosen by each party and the third by the two so chosen. If either party refuses or neglects to appoint an arbitrator within thirty days after the receipt of written notice from the other party requesting it to do so, the requesting party may nominate two arbitrators who shall choose the third. In the event the two arbitrators do not agree on the selection of the third arbitrator within thirty days after both arbitrators have been named, the reinsured shall petition the American Arbitration Association to appoint an arbitrator . . . . Any such arbitration shall take place in Morristown, New Jersey unless some other location is mutually agreed upon by the parties.

(emphasis added)  Respondent maintains that if its position respecting payment under the Comprehensive Catastrophe Program is correct, then payment is owed under the Special Contingency Program.

In response to respondent's Arbitration Demand, petitioners filed a motion to compel separate arbitration proceedings and stay the consolidated arbitration proceeding commenced by respondent.  Respondent cross-moved to compel a single arbitration.

## LEGAL STANDARD

Motions to compel arbitration are governed under the well-settled summary judgment standard set forth in Fed. R. Civ. P. 56(c). Interdigital Commc'ns Corp. v. Fed. Ins. Co., 392 F. Supp. 2d 707, 711 (E.D. Pa. 2005).  Summary judgment is appropriate where the moving party establishes that "there is no genuine issue as to any material fact and that [it is] entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  A factual dispute between the parties will not defeat a motion for summary judgment unless it is both genuine and material.  See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986).  The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be

insufficient to permit the non-moving party to carry its burden of proof. See Celotex v. Catrett, 477 U.S. 317, 318 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 465 U.S. 574, 586 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. Shields v. Zuccarini, 254 F.3d 476, 481 (3d Cir. 2001). At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. See Anderson, 477 U.S. at 249. In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party. Curley v. Klem, 298 F.3d 271, 277 (3d Cir. 2002).

**ANALYSIS**

In two earlier cases arising out of the same reinsurance contracts, Certain Underwriters at Lloyd's London ("Lloyd's"), one party of Reinsurers, sought the same relief of separate arbitration proceedings while respondent cross-moved for an order requiring petitioners to appoint one arbitrator in a consolidated arbitration proceeding. Following oral argument, this Court denied Lloyds' motion and granted WFIC's cross-motion. (Transcript of oral argument and the Court's oral decision in Certain Underwriters at Lloyds v. Westchester Fire Ins. Co., No. 05-3024 (Dec. 12, 2005) (hereinafter "Tr.")). As in that decision, this Court will grant WFIC's

cross-motion to commence arbitration proceedings under their single arbitration demand and deny Reinsurers' motion to invoke separate arbitration proceedings.

In its earlier decision in <u>Certain Underwriters at Lloyd's</u>, the Court addressed the issue of whether it had the authority to determine the proper scope of the arbitration proceeding between Lloyd's and WFIC. The Court, relying on the recent Supreme Court decision in <u>Green Tree Financial Corp. v. Bazzle</u>, 539 U.S. 444 (2003), ruled that it was for the arbitrator, not the Court, to decide whether there should be a consolidated arbitration proceeding. (Tr. 17). As in <u>Certain Underwriters at Lloyd's</u>, this Court is bound by the Supreme Court's decision in <u>Bazzle</u>.

In <u>Bazzle</u>, the Supreme Court addressed the question of whether disputes arising under identical arbitration provisions in contracts between a commercial lender and several of its clients could be addressed in a class arbitration. <u>Bazzle</u>, 539 U.S. at 447. The South Carolina Supreme Court had interpreted the arbitration provisions as permitting class arbitration. <u>Id</u>. The Supreme Court overruled the South Carolina Supreme Court holding that the arbitral tribunal, and not the court, had the requisite authority to decide whether class arbitration is appropriate. <u>Id</u>. at 454. In concluding that such decisions should be left to the arbitrators, the Court noted that "gateway matters, such as whether the parties have a valid arbitration agreement at all or whether a concededly binding arbitration clause applies to a certain type of controversy," are matters that parties would expect a court to decide. <u>Id.</u> at 452. The Court went on to state:

> the question is not whether the parties wanted a judge or an arbitrator to decide whether they agreed to arbitrate a matter. Rather the relevant question here is what kind of arbitration proceeding the parties agreed to. That question does not concern a state statute or judicial procedures. It concerns contract interpretation and arbitration procedures. Arbitrators are well situated to answer that question. Given these considerations, along with the arbitration contracts' sweeping language

>concerning the scope of the questions committed to arbitration, this matter of contract interpretation should be for the arbitrator, not the courts, to decide.

Id. (internal citations omitted). While the Supreme Court's decision dealt with the question of class arbitration as opposed to consolidation, more recent decisions have applied Bazzle in the context of a demand for consolidated arbitration proceedings. See Blimpie Int'l Inc. v. Blimpie of the Keys, 371 F. Supp. 2d 469 (S.D.N.Y. 2005) (ruling that the issue of consolidation was not a gateway matter and thus should be decided by an arbitrator and not the court); Yuen v. Superior Court, 121 Cal. Rptr. 3d 127, 134 (Cal. Ct. App. 2004) (Mosk, J. concurring opinion) ("[F]or purposes of determining whether or not consolidation is permissible under the FAA, [Bazzle]'s reasoning is applicable.").

Here, the Court must recognize the rationale of Bazzle and refer this matter to arbitration. Whether there should be separate arbitration proceedings or a single consolidated proceeding concerns contract interpretation and not gateway matters of determining whether arbitration is appropriate. The parties agree that their dispute should be arbitrated. What they do not agree on, and what the contract is silent on, is the appropriate type of arbitration proceeding. Bazzle and later rulings have clarified this area by holding that arbitrators, not courts, should decide the appropriate scope of arbitration.

Moreover, principles of efficiency strongly favor a single arbitration panel's determination of whether consolidation is appropriate under the agreements that make up the Reinsurance Program. Requiring multiple panels to decide the question of consolidated arbitration would likely result in strategic behavior that would only serve to frustrate a resolution of the parties' dispute. For instance, the parties might seek a determination from a particular

panel on the consolidation issue so as to bind later panels to that decision or panels may reach conflicting decisions about consolidation which will ultimately require a district court to decide which panel's interpretation of the agreement was correct. "In other words, courts would have to engage in exactly the type of activity the Supreme Court wanted to leave to the arbitrators." Irene M. Ten Cate, Multi-Party and Multi-Contract Arbitrations: Procedural Mechanisms and Interpretation of Arbitration Agreements Under U.S. Law, 15 Am. Rev. Int'l Arb. 133, 150 (2004).

Reinsurers mistakenly contend that the Bazzle decision actually favors severing arbitration into two separate proceedings, one for each contract entered into between Reinsurers and WFIC. Such a contention rests upon the interpretation that Bazzle neither requires nor permits the formation of a single arbitration panel. However, Bazzle explicitly reserves contract interpretation and arbitration proceedings, such as whether arbitration should be consolidated, for the arbitrators and not the court. That there are multiple contracts between the parties does not affect the Bazzle ruling because WFIC initiated the arbitration demand. Now the arbitrators must decide how the proceedings will be conducted, either in separate proceedings or in a consolidated proceeding.

Blimpie negates Reinsurers' contention that multiple contracts require multiple arbitration panels. There, forty-five different sub-franchisors, each with a different contract, filed a consolidated demand for arbitration against their common franchisor. Blimpie, 371 F. Supp. 2d at 470. The common franchisor sought to compel separate proceedings for each contract, arguing, like petitioners argue in this case, that the proper scope of arbitrable issues under the

arbitration provision may not cover the rights of all parties. Id. at 473. The court rejected this argument, reasoning that by attempting to separate the arbitration proceedings, the common franchisor conceded that the arbitration provision agreed to by the parties was valid and that the sub-francisor's claims fall within the scope of the agreement. Id. Thus, the issue of consolidation was for the arbitrators to decide, as it was not a gateway matter dealing with either the validity of the arbitration provision or its applicability to the sub-franchisors claims. Id. Relying on Bazzle, that court ultimately held that whether multiple contracts should result in multiple arbitration panels is a question to be adjudicated by the arbitrator. Id. As in Blimpie, this Court must allow the arbitrators to decide the scope of arbitration.

The same outcome, in a case with similar facts, can be found in the Central District of California's decision in Certain Underwriters at Lloyd's v. Cravens Dargan & Co., No. 05-4266 (JSL) (C.D. Cal. Aug. 11, 2005) (slip opinion). While the Cravens court did not explicate a detailed rationale for its decision (a decision which Lloyd's describes as "cryptic"), the court ultimately denied Lloyd's request for multiple arbitrations under multiple contracts in a multi-layer reinsurance program. The Court ordered the parties to a single arbitration pursuant to Cravens' original demand for a consolidated arbitration in order to determine whether consolidation was appropriate. The Cravens court recognized, albeit without explicitly stating as such, that a determination of consolidated arbitration was a decision best made by the arbitrators and not the Court. This is what Bazzle requires, and what this Court now finds is the proper outcome.

Reinsurers rely on Phila. Reins. Corp. v. Employers Ins. of Wausau, 61 Fed. App'x. 816 (3d Cir. 2003). That unpublished case predates Bazzle and supports the conclusion that multiple contracts should result in separate arbitration proceedings. The later decision in Bazzle has reshaped the applicable law, clarifying the inconsistent rulings of the lower courts and allocating the task of deciding the scope of arbitration to the arbitrators.

Reinsurers advance two post-Bazzle cases to support their contention that separate contracts should warrant this court to issue separate arbitration proceedings. Certain Underwriters at Lloyd's v. Century Indem. Co., 2005 WL 1941652 (E.D. Pa. Aug. 1, 2005) and Reliastar Life Ins. Co. v. Canada Life Assurance Co., 2005 U.S. Dist. LEXIS 4045 (D. Minn. Mar. 14, 2005). However, neither of these unpublished decisions even addressed the binding decision in Bazzle.

Reinsurers also urge the Court to endorse the interpretation of Bazzle in Employers Ins. Co. Of Wausau v. Century Indem. Co., 2005 U.S. Dist. LEXIS 37147 (W.D. Wis. July 20, 2005), where the court ordered separate arbitration proceedings for each separate contract entered into after the defendant issued a demand for consolidated arbitration. Century is distinguishable by its facts. While the Century defendants demanded consolidated arbitration proceedings in their arbitration demand, respondent WFIC does not raise the issue of what type of arbitration proceeding is appropriate. Instead, respondent concedes, consistent with Bazzle, that the type of arbitration proceeding, whether separate or consolidated, should be decided by the appointed arbitrators. As this Court noted in oral arguments between Lloyd's and WFIC in their initial

court appearance, interpreting Bazzle according to Century would run afoul of efficiency concerns. (Tr. at 22). More importantly, it would result in a direct conflict with Bazzle.[1]

Petitioners also attack WFIC's extraneous argument in support of consolidated arbitration – that there was an earlier course of dealing. Reinsurers argue that there is no course of dealing between themselves and WFIC regarding an agreement to consolidate arbitration or even arbitrating under the Special Contingency program. Regardless of the factual accuracy of these arguments, the issue of whether there is an earlier course of dealing between petitioner and respondent is wholly irrelevant. The arbitration clause between the parties clearly states that contract interpretation or the rights of parties with respect to transactions under the contract are to be arbitrated. This gateway matter being settled, Bazzle holds that the type of arbitration proceeding that should be held is to be decided by the arbitrators. Because the issue is not a gateway matter defined by Bazzle, but one of contract interpretation, the arbitrators should determine whether multiple arbitration panels or a consolidated panel should be appropriate.[2]

                     **s/William H. Walls**
                     United States Senior District Judge

---

[1] In their brief, petitioners argue that arbitrating under a consolidated arbitration could cause a potential conflict of interest between multiple parties in choosing an arbitrator. This argument should be brought before the arbitrators, in accordance with Bazzle. This Court does not have the jurisdiction to decide the appropriate type of arbitration proceedings.

[2] The Court declines to address the argument of whether New Jersey state law requires consolidated arbitration in this case. Some authority exists that lends support for the proposition that state law governs consolidation of arbitration. See New England Energy v. Keystone Shipping Co., 855 F.2d 1 (1st Cir. 1988) (ruling that Massachusetts state law governs the issue of consolidated arbitration because federal law is silent on the issue and therefore does not preempt state law). In New Jersey, N.J. Stat. § 2A:23B-10 authorizes state courts to consolidate separate arbitrations under separate contracts. However, Bazzle leaves the applicability of state law in the hands of the arbitrators and not this Court.

**Appearances:**

William S. Wachenfeld, Esq.
Mendes & Mount, LLP
One Newark Center, 19th Floor
Newark, NJ 07102
    Attorney for Petitioners, Markel International Insurance Company and Certain
    Underwriters at Lloyd's London

Seth Goodman Park
Siegal, Napierkowski & Park
533 Fellowship Road, Suite 120
Mt. Laurel, NJ 08054
    Attorney for Respondent, Westchester Fire Insurance Company